# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-cv-00673

| | |
|---|---|
| LISA D. CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ALEJANDRO MAYORKAS, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants Department of Homeland Security and United States Customs and Border Protection's ("CBP") Motion for Summary Judgment (Doc. No. 17) and Memorandum in Support (Doc. No. 19), Plaintiff Lisa Clark's Response in Opposition (Doc. No. 21), and Defendants' Reply in Support (Doc. No. 22). For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff is a CBP officer who transferred from New York to Charlotte in February 2018. Plaintiff's allegations, both administratively and judicially, center around her interactions with Selywn Millican ("Millican"), a CBP supervisor (though only Plaintiff's supervisor for a small portion of the time relevant to her claims).

On November 9, 2018, Plaintiff submitted a formal Equal Employment Opportunity ("EEO") Complaint to the agency. *See* Doc No. 9-2. Plaintiff's EEO Complaint detailed sixteen different claims, with eleven relating to allegations that she was discriminated against and subjected to a hostile work environment due to her sex and five related to a hostile work environment based on reprisal. *Id*.; *see also* Doc. Nos. 9-3 and 9-4.

1

On November 15, 2021, a final agency decision was issued, rejecting Plaintiff's claims in their entirety. *See* Doc. No. 9-4. The Final Agency Decision included a notice of appeal rights, including the right to appeal the decision to the Equal Employment Opportunity Commission within thirty days or file a civil action in federal district court within ninety days. *Id.* at 16–17; *see also* Compl. ¶ 70.

Plaintiff timely filed her judicial complaint in this action, bringing Title VII claims alleging sexual harassment (Count I), sexual harassment resulting in a hostile work environment (Count II), and retaliation for opposing the purported harassment (Count III). Plaintiff's Complaint dropped certain claims made in her EEO Complaint, while adding new factual allegations outside the scope of her EEO Complaint amongst the three counts alleged. Defendants then moved for partial dismissal of Plaintiff's Complaint, which the Court granted. As such, Count III and Plaintiff's unexhausted claims—specifically, her claims regarding her performance evaluations and promotional opportunities and allegations that Millican subjected her to less favorable duty positions—were dismissed.

Defendants subsequently answered the Complaint, denying Plaintiff's claims. On February 5, 2023, Defendants moved for summary judgment, which Plaintiff opposed. The Court now considers Defendants' motion.

## II. DISCUSSION

### A. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, the court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is

2

Case 3:21-cv-00673-GCM    Document 24    Filed 05/31/23    Page 2 of 13

insufficient to defeat a motion for summary judgment.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A motion for summary judgment must be granted if, after adequate time for discovery and upon motion, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient.").  In such a situation, because a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," there can be "no genuine issue as to any material fact."  *Celotex*, 477 U.S. at 322–23.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).  A fact is material only if it might affect the outcome of the suit under the governing substantive law.  *Id.* at 248.

### B.  PLAINTIFF'S CLAIMS

Plaintiff's two remaining claims against Defendants are for quid pro quo sexual harassment and creating a hostile work environment.  First, Plaintiff claims that Millican harassed Plaintiff by subjecting her to various unfounded investigations and name calling after Plaintiff rejected Millican's invitations to become romantically involved with him.  Compl. ¶¶ 41–44, 46–48.

3

Second, Plaintiff claims that Millican's alleged conduct created an intimidating work environment, which Defendants failed to correct. *Id.* ¶¶ 49–51, 54–55.

1. **Plaintiff's First Claim—Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964,** *as amended***, 42 U.S.C. § 2000e**

Plaintiff first alleges that Defendants harassed her when Millican told Plaintiff that she would regret her decision not to become romantically involved with him, subjected Plaintiff to various unfounded investigations and name calling when she rejected him, and failed to protect Plaintiff from Millican's conduct, of which Defendants were fully aware. *Id.* ¶¶ 42–44, 46. As a result of Defendants' alleged failure to protect Plaintiff from Millican's harassment, Plaintiff claims that she suffered from severe emotional distress which required her to receive professional counseling. *Id.* ¶ 47.

To establish a *prima facie* case of quid pro quo sex discrimination, a plaintiff must prove that (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment the plaintiff complained of was based upon sex; (4) the plaintiff's reaction to the harassment affected tangible aspects of her compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment and took no effective remedial action. *Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011) (citation omitted). If the plaintiff is successful in making a *prima facie* showing of harassment, "the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action." *Id.* (citations omitted). If the employer is successful, the burden shifts back to the plaintiff to establish that the employer's stated reason is mere pretext for discrimination. *Id.* at 223 (citation omitted).

Here, Defendants do not contend that Plaintiff has failed to establish the first requirement—that she, as a woman, belongs to a protected group—and do not argue that Plaintiff

4

has failed to establish the second prong of being subject to unwelcome sexual harassment. *See* Def.'s Mot. at 4. Defendants do, however, contend that Plaintiff cannot establish the third, fourth, or fifth elements of her *prima facie* case, asserting that she cannot show that any alleged harassment was based on her sex, that rejection of the alleged harassment was an express or implied condition or cause of a tangible employment action, or that Defendants knew or should have known of the alleged harassment and took no remedial action. *Id.* at 4–5. The Court addresses these elements in turn.

Defendants maintain that Plaintiff cannot establish the third element of her *prima facie* case simply by stating that Plaintiff "can[not] show . . . that the alleged harassment was based on sex" and that she "identifies no discriminatory motive based on her sex." *Id.*

A plaintiff can establish that alleged harassment was "based on sex" by showing that "but-for the employee's sex, he or she would not have been the victim of the discrimination." *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (citation and quotations omitted) (explaining the requirement in the context of a hostile work environment claim). Examples of discriminatory behavior based on a plaintiff's sex may include conduct such as uninvited touching, flirting, taunting, ogling, and invitations to go out on a date. *See, e.g.*, *id.* (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995)) (determining the defendant had *not* sexually harassed the plaintiff in part because "[h]e never touched the plaintiff," "did not invite her . . . to go out on a date with him," and "never said anything to her that could not be repeated on primetime television").

Here, Plaintiff has sufficiently established the third prong of a *prima facie* claim of quid pro quo sex discrimination as she alleges that shortly after she began working in the CBP Cargo Unit, Millican expressed a romantic interest in her and made "several attempts to date her."

5

Compl. ¶¶ 9–10. Plaintiff further alleges and testified that Millican asked another subordinate to approach Plaintiff on Millican's behalf to give Plaintiff his phone number and tell her that he "want[ed] to date her," and that after Plaintiff expressed that she did not want to date Millican, he warned her that she was "ma[king] a mistake." Compl. ¶¶ 12–13, 23–24; Doc. No. 19-3 at 5. Plaintiff's allegations sufficiently establish that but for her sex, she would not have been the victim of Defendants' alleged discrimination.

With respect to the fourth element of her *prima facie* case for Count I, Plaintiff alleges that after Plaintiff rejected Millican's advances, "Defendant[s] subjected Plaintiff to various unfounded investigations and name calling." Compl. ¶¶ 44–45. Plaintiff further alleges that after rejecting Millican, he "began to scrutinize [her] job performance and scrutinize her more harshly in comparison to others" and "would often follow Plaintiff out of the office yelling rudely." Compl. ¶¶ 16, 30. Defendants argue that Plaintiff cannot show that her acceptance or rejection of Millican's alleged harassment was an express or implied condition or cause of a tangible employment action. Def.'s Mot. at 4.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Okoli*, 648 F.3d at 222 (quoting *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). While name calling is a harassing act, Plaintiff must establish at step four that the act led to a tangible employment action. *See Raynor v. G4S Secure Sols. (USA) Inc.*, No. 3:17-cv-160, 2017 WL 6542750, at *12 (W.D.N.C. Dec. 21, 2017), *aff'd*, 805 F. App'x 170 (4th Cir. 2020) (granting defendants' summary judgment motion in part because "Plaintiff has not presented evidence of a history of

6

typical harassing acts like name calling, threats, and slurs that lead to a tangible employment action, like Plaintiff's termination").

Further, courts have determined that "investigation into alleged misconduct, even one that is a 'sham,' . . . does not constitute a tangible employment action for the purposes of Title VII." *Rademakers v. Scott*, No. 2:07-cv-718, 2009 WL 3459196, at *2 (M.D. Fla. Jan. 22, 2009), *aff'd*, 350 F. App'x 408 (11th Cir. 2009) (citation omitted); *Dabney v. Mayorkas*, No. 1:20-cv-336, 2021 WL 8129405, at *12 (N.D. Ga. Aug. 26, 2021), report and recommendation adopted, No. 1:20-cv-336, 2022 WL 1177272 (N.D. Ga. Feb. 7, 2022), *aff'd sub nom. Dabney v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 22-11184, 2023 WL 2583500 (11th Cir. Mar. 21, 2023) (same); *see also Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir.1996) (holding that charges of wrongdoing in workplace alone cannot be adverse employment actions because "if the charges were ultimately dismissed, [the plaintiff] would not have suffered any adverse effect from them."); *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001), *aff'd*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001) (citation omitted) ("[M]ere investigations by plaintiff's employer cannot constitute an adverse action because they have no adverse effect on plaintiff's employment.").

Here, as noted, Plaintiff has only established that after rejecting Millican's advances, she was subjected to name calling and an unfounded investigation, the latter of which was short-lived and closed when Plaintiff provided a doctor's note justifying her absence. Neither of these qualify as tangible employment actions. Because Plaintiff failed to demonstrate the existence of an element essential to her case, summary judgment with respect to Count I is appropriate. Nonetheless, the Court will discuss the last disputed element of her quid pro quo sex discrimination claim.

7

Finally, Plaintiff alleges that Defendants were aware of Millican's harassing conduct but failed to protect her from additional harassment or to remove Millican in a timely manner. Compl. ¶ 46. Defendants contend that Plaintiff can make no showing that Defendants knew or should have known about Millican's alleged harassment of Plaintiff but took no remedial action, pointing to the fact that within eight days of receiving notice of Millican's alleged behavior, a cease and desist letter was directed to Millican ordering him to refrain from any unprofessional conduct toward Plaintiff, and fourteen days after that, Millican relocated to a work station as far from the Cargo Unit as the floorplan would allow. Def.'s Mot. at 5–6. The parties do not dispute that Defendants had actual knowledge of Plaintiff's allegations as Plaintiff sent a report of sexual harassment to the Department of Homeland Security's Joint Intake Center on October 1, 2018. Doc. No. 19-2. As such, the only dispute with respect to element five of Plaintiff's *prima facie* case is whether Defendants effectively acted to remediate or prevent Millican's alleged behavior.

"[O]nce an employer has notice of harassment, it must take prompt remedial action reasonably calculated to end the harassment." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 424 (4th Cir. 2014) (citation and internal quotations omitted). Though "[a] stoppage of harassment shows effectiveness" of the remedial action, "where effectiveness is not readily evidenced by stoppage," courts may "consider the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998) (citations omitted). Further, other circuits have determined that examples of reasonable employer responses may include prompt investigation of the allegations, oral or written warnings to refrain

8

from harassing conduct, and warnings that future misconduct could result in progressive discipline. *Id.* (citations omitted).

Here, the day after receiving notice of Plaintiff's allegations, Defendants issued a verbal cease and desist to Millican related to his alleged conduct. Doc. No. 21-4 at 53. Following the verbal cease and desist, Millican moved out of his office located near Plaintiff's workspace and relocated to an area further away in the facility. *Id.* Further, CBP issued a written cease and desist letter to Millican one week after he received the verbal order, directing him to refrain from any unprofessional conduct toward Plaintiff and warning him that violation of the order or CBP Standards of Conduct could warrant disciplinary or other adverse action. Doc. No. 19-5. Scott Sams was named as acting Cargo Unit supervisor just over three weeks after Plaintiff notified Defendants of her allegations. *Id.* at 54.

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish the fifth element of her claim of quid pro quo sex discrimination. A reasonable jury would view Defendants' response as effective given the short time in which Defendants responded and CBP's written and oral warnings to Millican warning him that future misconduct could result in progressive discipline.

Because Plaintiff has failed to establish all of the essential elements of her *prima facie* case with respect to Count I, the Court finds that there is no genuine dispute of material fact and Plaintiff cannot maintain her claim under Title VII.

2. **Plaintiff's Second Claim—Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964,** *as amended***, 42 U.S.C. § 2000e, Resulting in a Hostile Work Environment**

Plaintiff next alleges that Millican's unwelcome conduct created a hostile and intimidating work environment. Compl. ¶ 49. Like in Count I, Plaintiff claims that when she rejected Millican's romantic advances, he initiated various unfounded investigations against her.

*Id.* ¶¶ 50–51. She further claims that Defendants failed to take swift and proper corrective action to stop Millican's harassment of her, thus subjecting Plaintiff to sex discrimination in violation of Title VII. *Id.* ¶¶ 54–55. Defendants contend that Plaintiff has failed to establish that any of Millican's alleged conduct was sufficiently severe and pervasive.

To establish a *prima facie* case of a hostile work environment sexual harassment under Title VII, "the plaintiff must prove that the relevant conduct was (1) unwelcome; (2) based on the plaintiff's sex; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) imputable to the employer." *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022) (citation omitted). As Defendants do not dispute these elements in their Motion, the Court assumes for the purposes of deciding the Motion that Plaintiff has satisfied the first, second, and fourth elements and considers only whether Plaintiff satisfied the third element of her hostile work environment claim.

To determine whether a work environment is sufficiently hostile or abusive, courts "examine the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Harris v. Gen. Motors Powertrain*, 166 F.3d 1209 (4th Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). Courts also evaluate the offensiveness of the work environment from both the plaintiff's subjective standpoint and the objective standpoint of a reasonable person in the plaintiff's position. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

In this case, Plaintiff contends that Millican's offending conduct consisted of (1) using an intermediary to pass along his phone number to Plaintiff and express his interest in dating her (Compl. ¶¶ 12–13); (2) scrutinizing Plaintiff's job performance and generally scrutinizing her more harshly than others (*Id.* ¶ 16); (3) calling Plaintiff on her private cell phone to request status updates at unusual times (*Id.* ¶ 17); (4) attempting to interfere with Plaintiff's effort to transfer to a different position in the Cargo Unit and suggesting that Plaintiff needed him on her side to do so (*Id.* ¶¶ 18–21); (5) calling Plaintiff into his office up to several times a day to discuss his past dating relationships or have other non-work-related conversations (*Id.* ¶¶ 25–26); (6) making comments regarding other women's bodies, which made Plaintiff and other employees uncomfortable (*Id.* ¶¶ 27–28); (7) following Plaintiff out of the office while "yelling rudely" (*Id.* ¶ 30); (8) preventing Plaintiff from entering the workplace and berating her if she was two to three minutes late for her shift (*Id.* ¶ 31); and (9) launching an unfounded investigation against Plaintiff for an unapproved absence even though Plaintiff was on medical leave and Millican had refused to accept Plaintiff's doctor's note (*Id.* ¶¶ 32–36).

Even assuming Plaintiff's claims regarding Millican's conduct are true, though his actions were perhaps rude and unpleasant, a reasonable person would not view them as sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment. "Title VII is not a federal guarantee or refinement and sophistication in the workplace," and allowing Plaintiff to proceed to trial on Count II "would countenance a federal cause of action for mere unpleasantness." *Hartsell*, 123 F.3d at 773; *see also Greene v. A. Duie Pyle, Inc.*, 170 F. App'x 853 (4th Cir. 2006) (affirming the lower court's determination that the workplace about which plaintiff complained, "though crude[,] is not the hellish environment against which Title VII protects").

11

Further, the events about which Plaintiff complained, even considered cumulatively, were infrequent. For example, Plaintiff admits that Millican only yelled at her for being late on one occasion, and though he warned her that she could be written up for being late again, Plaintiff was not punished. Doc. No. 21-4 at 34, 59. Further, Plaintiff admits that Millican's calls to her personal cell phone were during Hurricane Florence when it was routine for supervisors to call their reports each day, and while Millican was not officially her supervisor at that time, he was to become her supervisor soon after. *Id.* at 29–30. Moreover, the Complaint does not describe Millican's alleged conduct as threatening or humiliating, and at deposition, Plaintiff only described as "very embarrassing" the isolated incident of Millican yelling at her for being late to work. *Id.* at 59.

Finally, at deposition, Plaintiff described Millican's behavior she perceived as threatening—for example, asking her for her personnel file (Doc. No. 21-4 at 52), threatening to investigate her before actually pursuing an investigation (*Id.* at 56–57), telling her he would write her up if she came to work late for a second time (*Id.* at 59), visiting other officers on Plaintiff's side of the building after he was moved to the other side (*Id.* at 68), and seemingly following Plaintiff around the building (*Id.* at 69). Still, even viewing these alleged incidents cumulatively, Millican's alleged conduct does not rise to the level of that which can be reasonably deemed as severe and pervasive. *Cf. Smith v. First Union Nat. Bank*, 202 F.3d 234, 238–39, 243 (4th Cir. 2000) (determining that the plaintiff's harassment was sufficiently severe or pervasive where her supervisor "subjected her to a barrage of threats and gender-based insults" "on a regular basis," including that the only way for women to get ahead "was to spread her legs" and stating that he could "see why a man would slit a woman's throat" while standing over the plaintiff in her work chair); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995) (in the

context of a national origin hostile work environment claim, determining that harassment was severe or pervasive where plaintiff was abused by supervisor and other employees almost daily for a period of six months); *Beardsley v. Webb*, 30 F.3d 524, 528–29 (4th Cir. 1994) (determining supervisor's alleged conduct to be sufficiently severe or pervasive where supervisor, among other things, made repeated comments about kissing plaintiff and it being other employee's "turn to have [their] way with her" and asked her what kind of underwear she wore, which led to insubordination from plaintiff's own direct reports). Further, Plaintiff has not alleged that Millican's conduct unreasonably interfered with her work performance.

For these reasons, Plaintiff has failed to establish the third element of her claim for hostile work environment sexual harassment. As such, the Court finds that there is no genuine dispute of material fact with respect to Count II and Plaintiff cannot maintain a claim for sex discrimination under Title VII.

### III. CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 17) is hereby **GRANTED**.

Signed: May 31, 2023

Graham C. Mullen
United States District Judge